UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
NEW YORK

------------------------------------------------------
STEPHANIE HAYLE,

                 Plaintiff,

                                 **<u>MEMORANDUM AND ORDER</u>**

     -against-                          08-CV-2396 (DRH)(GRB)


NASSAU HEALTH CARE CORPORATION
and PRECIOUS OLIVEIRA, in her official and
individual capacity,

                 Defendants.
-------------------------------------------------------X

**A P P E A R A N C E S :**

**For the Plaintiff:**
**LAW OFFICES OF FREDERICK K. BREWINGTON**
556 Peninsula Blvd.
Hempstead, New York 11550
By:    Frederick K. Brewington, Esq.


**For the Defendants:**
**CLIFTON BUDD & DEMARIA, LLP**
420 Lexington Avenue
New York, New York 10170
By:    Sheryl Ann Orwel, Esq.


**VENABLE LLP**
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, NY 10020
By:    Brian J. Clark, Esq.


**HURLEY, Senior District Judge:**

       Plaintiff Stephanie Hayle ("Hayle" or "plaintiff") commenced this action against

defendants Nassau Health Care Corporation ("NHCC") and Precious Oliveira

("Oliveira") (collectively "defendants") asserting claims of race-based discrimination and

retaliatory employment practices in violation of 42 U.S.C. § 2000(e) (Title VII), 42 U.S.C. §

1981, 42 U.S.C. § 1983, and New York's Human Rights Law, Executive Law § 296.  Presently

before the Court is defendants' motion for summary judgment pursuant to Federal Rule of

Civil Procedure 56 ("Rule 56").  For the reasons set forth below, the defendants' motion is

granted.

## BACKGROUND

The following facts, drawn from the parties' local Rule 56.1 statements, the pleadings,

and prior decisions in this case, are undisputed unless otherwise noted.

*Procedural History*

In an Order dated June 13, 2008, this Court, adopting Magistrate Judge Orenstein's

Report and Recommendation in its entirety, granted defendants' motion pursuant to Federal

Rule of Civil Procedure 21 to sever into separate actions the claims of seven plaintiffs,

including Leacock, each of whom claimed that defendants had discriminated against

him or her based on race.  (*See* 06-CV-4757, Docket No. 64 (Memorandum and Order,

dated June 13, 2008)).  In the same opinion, the Court also dismissed plaintiffs' Title VI

claims in their entirety and their Title VII claims against all of the individual defendants,

including defendant Oliveira.  (*Id.* at 14-15.)

*Plaintiff's Employment at Nassau University Medical Center*

Plaintiff, an African-American female, "has been employed by [Nassau University

Medical Center ("NUMC")] since on or about December 22, 1975."  (Defs.' R. 56.1 Stmt. ¶ 9.)

"Plaintiff was hired as a Clerk-Typist and is currently employed as [an] Admissions Officer II in

the Admissions Department at NUMC," which is part of the Patient Access Services Department.

(*Id.* ¶¶ 2, 10.)

Defendant Oliveira became the acting director of the Patient Access Services Department in 2003, and became the permanent director in 2005, although plaintiff points out that Oliveira has yet to pass the civil service exam for this position.  (*Id.* ¶¶ 7-8; Pl.'s R. 56.1 Stmt. ¶ 8.)  "At the time Defendant Oliveira became the Acting Director of Patient Access Services," there were five supervisors of patient access working under Oliveira including plaintiff.  (Hayle Decl. ¶ 7.)  The other supervisors of patient access were Kimberly Fasbach, Patricia Callan, Cathy Pane, and Stacy Louidice," all of whom are white females.  (*Id.*)

"Prior to Oliveira becoming Acting Director of the Patient Access Services, each supervisor was responsible for [coordinating] the staff schedules for their respective shifts," including granting vacation time, however, after Oliveira became acting director, she "assigned Cathy Pane . . . the duty of scheduling for the entire department."  (Defs.' R. 56.1 Stmt. ¶¶ 14-16; Hayle Decl. ¶ 9.)  At the time this motion was filed, Pane performed "this function for all employees in the patient Access Department" except that "NHCC [allowed] Louidice, the vital statistics supervisor, to set the schedules for those employees due to the limited number of employees working in vital statistics" and allowed Fasbach "to set schedules for employees who work[ed] the midnight shift due to the small number of employees on this shift."  (Defs.' R. 56.1 Stmt. ¶¶ 17-18.)  Defendants claim that "[s]ince at least October of 2007, Oliveira asked Plaintiff to assume all scheduling duties from Cathy Pane" and that Hayle refused, however, Hayle insists that she was willing to accept these duties.  (*Id.* ¶ 20; Pl.'s R. 56.1 Stmt. ¶ 20.)

Plaintiff claims that in addition to having been stripped of her scheduling duties, she was not treated similarly to her colleagues in that "[t]he other supervisors of patient access, Louidice, Fasbach and Callan all could sign off on vacation slips for employees while [she] could not."  (Hayl Decl. ¶ 10.)  Plaintiff further complains that she "is the only supervisor who does not have

access to the Kronos timekeeping system," and that as a result she has "received limited overtime hours in comparison to other White supervisors." (Pl.'s R. 56.1 Counterstatement ¶¶ 17-18.) In addition, plaintiff claims that she "was required to do more work than her White colleagues/supervisors" and that she was mistreated when NHCC denied her time off during a period where it granted time off to supervisor Callan. (*Id.* ¶¶ 21-22.)

*Plaintiff's Attendance at Meetings*

Plaintiff "alleges that Oliveira excluded her from unscheduled impromptu supervisory meetings in Oliveira's office that addressed emergency situations or issues that arose suddenly," but plaintiff concedes that she "does not know what the supervisors discussed during those meetings or whether the topics that were discussed during these meetings related to her job responsibilities or the employees she supervised." (Defs.' R. 56.1 Stmt. ¶ 30.) In addition, plaintiff does not dispute that she "was invited to and attended both the scheduled supervisors' and general department meetings" that the department held each month. (*Id.* ¶ 28.)

*The Alleged Threat*

According to plaintiff, in February of 2004, "Oliveira stated to a group of employees of which Plaintiff was one, 'I may have not brought you here, but I can get you out.' " (Defs.' R. 56.1 Stmt. ¶ 22.) Although plaintiff cannot recall the circumstances surrounding the conversation, she claims that the statement was directed at her because Oliveira was "looking directly at [her]." (Hayle Dep. at 78-79.)

Plaintiff cannot recall any other times that Oliveira threatened her employment. (Pl.'s R. 56.1 Stmt. ¶ 24.) Moreover, at the time this motion was filed, plaintiff was an employee in good standing. (Defs.' R. 56.1 Stmt. ¶ 25.) In addition, plaintiff concedes that she has consistently received favorable performance evaluations from Oliveira. (Pl.'s R. 56.1 Stmt. ¶ 26.)

*The Admissions Committee*

Both parties agree that "Oliveira chose Plaintiff to spearhead a committee [comprised of Oliveira and all of the supervisors in the Patient Access Services Department] designed to revamp the admissions process." (Defs.' R. 56.1 Stmt. ¶ 34.)  Plaintiff claims, however, that "on May 10, 2004, when Plaintiff Hayle held the first meeting to get ideas for the reorganization, Defendant Oliveira undermined [plaintiff's] authority, by taking the meeting to a totally different tangent, and shifting the focus of the discussions that Ms. Hayle was trying to effectuate with the committee members." (Pl.'s R. 56.1 Counterstatement ¶ 15.)  Defendants deny this accusation, asserting that Oliveira was simply acting appropriately in her role as "chair" of the meeting.  (*See* Defs.' Reply Mem. at 8.)

*Plaintiff's Complaints to the Office of Diversity and NYSDHR*

"At least since June 28, 2001, Plaintiff complained to the NHCC Office of Diversity Affairs [("O. D.")] that she believed that certain NHCC employees were discriminating against her." (Defs' R. 56.1 Stmt. ¶ 32.)  She continued to make various complaints to the O. D. in September of 2001, June of 2003, July of 2003, and throughout 2004.  (*Id.* ¶ 32; Pl.'s R. 56.1 Stmt. ¶ 33; Pl.'s R. 56.1 Counterstatement ¶ 20.)  Whether Oliveira personally had any knowledge that Hayle had made complaints to the O. D. is in dispute. (Pl.'s R. 56.1 Stmt. ¶ 34.) Furthermore, "[o]n or about May 11, 2004, Plaintiff Hayle filed a Charge of Discrimination with the New York State Division of Human Rights." (Pl.'s R. 56.1 Counterstatement ¶ 19.)

### *DISCUSSION*

## I. Applicable Law and Legal Standard

Summary judgment pursuant to Rule 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation

5

demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts*," Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (*quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

The district court, in considering a summary judgment motion, must also be

6

"mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because "the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions. *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *Id*. at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Id*. at 211 (quoting *Matsushita*, 475 U.S. at 587).

Summary judgment is generally inappropriate where questions of the defendant's state of mind are at issue, *Gelb v. Bd. of Elections of the City of N. Y.*, 224 F.3d 149, 157 (2d Cir. 2000), and should thus be granted with caution in employment discrimination cases. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 134 (2d Cir. 2000). Nonetheless, "summary judgment remains available to reject discrimination claims in cases lacking genuine issues of material fact." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 40 (2d Cir. 1994). "The summary judgment rule would be rendered sterile . . . if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985). "[T]he salutary purposes of summary judgment — avoiding protracted, expensive and harassing trials — apply no less to discrimination cases than to commercial or other areas of litigation." *Id*. "When no rational jury could find in favor of the

nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224.

## II. Plaintiff's Discrimination Claim

### A.      Legal Standard

In *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-804, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the Supreme Court first enunciated the now-familiar "burden-shifting" formula used in analyzing Title VII employment discrimination claims based on indirect or circumstantial evidence.  This standard was further refined in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-511, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).  Under McDonnell Douglas and its progeny, a plaintiff must first establish a *prima facie* case of discrimination by showing she: (1) belonged to a protected class, (2) was qualified for the position she held or sought, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discriminatory intent.  *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).  The burden of establishing a *prima facie* case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal."  *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).  It is a burden of production, not persuasion, and involves no credibility assessments.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S. Ct. 2097,147 L. Ed. 2d 105 (2000).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse act]." *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks omitted).  The

employer's burden of showing a legitimate non-discriminatory reason for its actions is not a particularly steep hurdle.  Federal courts do not have a "roving commission to review business judgments," *Mont. v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 106 (2d Cir. 1989) (quoting *Graefenhain v. Pabst Brewing Co*., 827 F.2d 13, 21 n.8 (7th Cir. 1987)), and thus, "[e]vidence that an employer made a poor business judgment . . . generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc*., 859 F.2d 1108, 1116 (2d Cir. 1988).

Should the employer satisfy its burden, the *McDonnell Douglas* framework and its presumptions and burdens disappear, leaving the sole remaining issue of "discrimination vel non."  See *Reeves*, 530 U.S. at 143.  To rebut an employer's proffered non-discriminatory rationale for its actions and withstand summary judgment, a plaintiff must present more than allegations that are "conclusory and unsupported by evidence of any weight."  *Smith v. Am. Exp. Co*., 853 F.2d 151, 154-55 (2d Cir. 1988).  "To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases."  *Meiri*, 759 F.2d at 998. Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Reeves*, 530 U.S. at 143.

Finally, "the standards for proving discrimination under Section 296 of the New York Executive Law are the same as under Title VII."  *Lucas v. South Nassau Cmtys. Hosp.*, 54 F. Supp. 2d 141, 146 (E.D.N.Y. 2008) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 479, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982); *Stetson v. NYNEX Serv. Co.*, 995 F.2d 355, 360 (2d Cir. 1993) (plaintiff's claim under New York's Human Rights Law "is governed by

the same standards as his federal claim")).  "[A]ccordingly, the New York Executive Law

inquiry is subsumed within the Title VII analysis."  *Id*.

**B. *Application to Plaintiff's Discrimination Claim***

As described above, the Court begins its analysis by determining whether or not the

plaintiff has made out a *prima facie* case.  Here, the defendant[1] concedes that Hayle, who is

African American, is a member of a protected group and was qualified to perform her job.

(Defs.' Mem. in Supp. of Summ. J. at 17.)  Defendant, however, asserts that plaintiff is unable to

establish that Hayle suffered adverse employment action under circumstances giving rise to an

inference of discrimination.  (*Id*.)

*Adverse Employment Action*

The Supreme Court has stated that in order to be actionable under federal discrimination

laws, an adverse employment action must be "tangible" or "material."  *Burlington Indus., Inc.*

*v. Ellerth*, 524 U.S. 742, 761; 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); *see also Joseph v.*

*Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) ("A plaintiff sustains an adverse employment action if

he or she endures a materially adverse change in the terms and conditions of employment.")

(citation and internal quotation marks omitted).  "A tangible employment action constitutes a

significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant

change in benefits."  *Ellerth*, 524 U.S. at 761.  Materially adverse employment actions also

include "a demotion evidenced by a decrease in wage or salary, a less distinguished title, . . .

or other indices . . . unique to a particular situation."  *Feingold v. New York*, 366 F.3d 138,

---

[1]      Since the only remaining defendant subject to plaintiff's Title VII claims is NHCC, the
use of "defendant" in Parts II and III of this opinion refers to NHCC.

152 (2d Cir. 2004) (citations and internal quotations omitted).  However, a "bruised ego," a "demotion without change in pay, benefits, duties, or prestige," or "reassignment to [a] more inconvenient job" are all insufficient to constitute a tangible or materially adverse employment action.  *Ellerth*, 524 U.S. at 761 (internal quotations and citations omitted).

Plaintiff's claim that she suffered adverse employment action because she was excluded from impromptu meetings between Oliveira and other supervisors in the department is devoid of any factual support.  (Pl.'s Mem. in Opp'n at 8-9.)  Plaintiff testified during her deposition that she does not know what the supervisors discussed during those meetings or whether the topics that were discussed during these meetings related to her job responsibilities or the employees she supervised or whether it was necessary for her to be included.  (Hayle Dep. at 65-71).  Moreover, plaintiff has failed to provide any evidence that would create a genuine issue of fact as to whether her exclusion from the alleged impromptu meetings was materially adverse to her employment.

In addition, plaintiff's claim that Oliveira usurped plaintiff's authority when she instructed plaintiff to spearhead a committee to revamp the in-patient hospital admissions process and then took control of a committee meeting that plaintiff was attempting to conduct does not establish that plaintiff suffered adverse employment action.  (Pl.'s Mem. in Opp'n at 10.)  Although plaintiff claims that Oliveira embarrassed her and detracted from her ability to lead, any embarrassment plaintiff may have felt at the meeting is akin to a bruised ego and not an adverse employment action.  Moreover, plaintiff's own admission that she and the committee were able to complete the assigned task undercuts any claim that Oliveira's actions negatively affected her employment.  (Hayle Dep. at 86.)

Similarly, plaintiff's allegations that she suffered adverse action because Oliveira took away her scheduling duties and gave those duties to Pane are not sufficient to support a

11

discrimination claim.  Plaintiff has failed to offer any evidence that her loss of duties was materially adverse to her employment and not simply an alteration of her duties.  *See Galabya v. N. Y. City Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("To be 'materially adverse' a change in working conditions must be 'more disruptive than . . . an alteration of job responsibilities.'") (quoting *Crady c. Liberty Nat'l Bank and Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)). Moreover, plaintiff insists that after Oliveira became acting director she remained busier than the other supervisors in her department, but she provides no evidence that the responsibilities she maintained were any less significant than the scheduling duties that were transferred to Pane.  *See Crady*, 993 F.2d at 136 (holding that plaintiff did not establish adverse action because "he [did] not show that [his current responsibilities] were less significant than the responsibilities he previously enjoyed").

Plaintiff's complaint that she was not able to get as much overtime as the other supervisors in her department is also deficient because it is comprised only of her own conclusory testimony.  Plaintiff attributes her lack of overtime to the fact that she did not have access to the Kronos time-keeping system, but fails to allege how or why her access to Kronos affected her ability to "get as much overtime as the other supervisors" including Cathy Pane. (Hayle Decl. 13.)  Although plaintiff claims that she observed Cathy Pane working overtime hours, she admits that she did not know the tasks that Ms. Pane was working on during this alleged time period and has not presented any evidence demonstrating that Ms. Pane was being paid for this alleged overtime.  (Hayle Dep. at 123-25.)

Based on the above, plaintiff cannot prevail on her discrimination claim because she has not presented any evidence raising a genuine issue of fact as to whether she suffered any adverse employment action.

12

*Inference of Discrimination*

Plaintiff's discrimination claim is similarly deficient because she provides no evidence establishing that any of the alleged adverse actions occurred under circumstances giving rise to an inference of discrimination.

Plaintiff's claim that discrimination can be inferred because she was treated differently "as compared to the other similarly-situated Caucasian supervisors under Oliveira" lacks sufficient factual basis. (Pl.'s Mem. in Opp'n at 11-12.)  When considering whether a plaintiff has shown that she was subjected to disparate treatment, i.e., treated "less favorably than a similarly situated employee outside [her] protected group," the Second Circuit requires that the plaintiff demonstrate that she was "similarly situated in all material respects" to the individuals with whom she seeks to compare herself.  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).  Here, plaintiff fails to offer any evidence concerning the circumstances of the White supervisors' employment other than that they were all supervisors in the Patient Access Department.  Moreover, Hayle, who states that her responsibilities were "focus[ed] [on] inpatient admissions," has failed to allege any facts supporting her claim that the other supervisors in the patient access department performed duties similar to her.  (Pl.'s R. 56.1 Stmt. ¶ 18.)  For example, Hayle does not offer any evidence demonstrating that Ms. Louidice, who was the vital statistics supervisor, performed duties similar to plaintiff's duties in the admissions department. Furthermore, plaintiff admits that Ms. Pane who is an Administrator III is her own supervisor and maintains different job responsibilities than plaintiff who is an Administrator II.  (Hayle Dep. at 47-48; Pl.'s R. 56.1 Stmt. ¶ 8.)

Similarly, Oliveira's statement to a group of employees, "I may have not brought you here, but I can get you out," does not establish an inference of discrimination.  Although a

13

plaintiff can demonstrate an inference of discrimination by showing that "the employer criticized the plaintiff's performance in ethnically degrading terms" or "made invidious comments about others in the employee's protected group," "[a] plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn." *Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005). Here, even if, as plaintiff suggests, Oliveira was "looking right at [her]" when she made this comment, plaintiff has not presented any evidence demonstrating that Oliveira's comment was at all related to plaintiff's race. In fact, it is undisputed that Oliveira was speaking to a group of both White and African American employees. As a result, a reasonable juror could not find an inference of discrimination based on this single comment.

Furthermore, plaintiff's theory that discrimination can be inferred because plaintiff was replaced by someone outside of her protected class is devoid of any evidentiary support. (Pl.'s Mem. in Opp. To Summ. J. at 12.) Nowhere in plaintiff's brief does she explain the relevance of this theory to the facts of this case, including when the alleged replacement took place, who replaced her, and the duties he or she assumed, nor does she cite to any evidence in the record supporting this claim. After reviewing the record it seems that the only mention of a replacement is referenced in Doreen Whethers's notes from her June 28, 2001 meeting with plaintiff. (Ex. D, Case Summary at 1 ("Plaintiff's duties were reduced and allegedly a Hispanic worker resumed her duties.")) Based on this evidence alone, no reasonable trier of fact could infer discriminatory intent.

For the reasons stated above, plaintiff has failed to establish her *prima facie* case in that she has not presented sufficient evidence that any alleged adverse employment actions

14

occurred under circumstances giving rise to an inference of discriminatory intent.  Since

plaintiff has failed to satisfy her burden of establishing a *prima facie* case, this Court will not

shift the burden over to the employer to offer a legitimate, non-discriminatory reason for its

actions.  *See Patterson*, 375 F.3d at 221 ("Once the plaintiff satisfies his initial minimal

burden, the burden of production shifts to the employer") (internal quotation marks

omitted).  Therefore, the Court dismisses plaintiff's Title VII discrimination claims.

**III.**   **Plaintiff's Retaliation Claim**

**A.**   ***Legal Standard***

"Section 704(a) of Title VII makes it unlawful to retaliate against an employee, because

he has opposed any practice made an unlawful employment practice by this subchapter, or

because he has made a charge, testified, assisted, or participated in any manner in an

investigation, proceeding, or hearing under this subchapter." *Deravin v. Kerik*, 335 F.3d

195, 203 (2d Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)).  "In order to present a prima facie

case of retaliation under Title VII . . . a plaintiff must adduce evidence sufficient to permit a

rational trier of fact to find [1] that [ ] he engaged in protected participation or opposition

under Title VII, . . . [2] that the employer was aware of this activity," and "[3] that the

employer took adverse action against the plaintiff." *Kessler v. Westchester Cty. Dep't of

Social Servs.*, 461 F.3d 199, 205-06 (2d Cir. 2006) (internal quotation omitted).  In addition,

the Supreme Court recently clarified the causation standard required by § 704(a)

stating, "a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his

or her protected activity was a but-for cause of the alleged adverse action by the employer,"

as distinct from "a motivating factor," which had previously been the standard in the Second

Circuit. *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 2013 WL 3155234, *16 (June 24,

15

2013); *Kessler*, 461 F.3d at 206.

Claims of retaliation pursuant to Title VII are analyzed according to the burden-shifting framework set forth in *McDonnell Douglas*.  *See Terry*, 336 F.3d at 141.  Once the employee has established a *prima facie* case, the employer "must proffer a legitimate, non-discriminatory reason for the adverse action.  If it does so, then the burden shifts back to the [employee] to demonstrate pretext." *Slattery*, 248 F.3d at 94-95.

**B.  *Application to Plaintiff's Retaliation Claim***

Plaintiff claims that once Defendant Oliveira "became aware" of Plaintiff's communications with the O. D., "Defendant Oliveira's discrimination and retaliation against [her] escalated."  (Pl.'s Mem. in Opp'n at 14-15.)  Assuming that Hayle engaged in protected activity when she complained to the O. D., defendants argue that plaintiff has not met the knowledge requirement because Ms. Oliveira personally did not know about the complaints.  This argument, however, is unavailing because the Second Circuit does not require anything more than "general corporate knowledge that the plaintiff has engaged in a protected activity."  *Gordon v. N. Y. City Bd. Of Educ.*, 232 F.3d 111, 116-17 (2d Cir. 2000).  Therefore, once plaintiff complained to the O. D., a department within the corporation, NHCC was charged with knowledge of her complaints.

Plaintiff, however, has failed to establish that any of the alleged adverse actions were causally connected to the protected activity.  What qualifies as an adverse employment action in the context of a claim of retaliation is much broader than a claim of discrimination. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ("The scope of the antiretaliation provision extends beyond work-place-related or employment-related retaliatory acts and harm."); *Hicks v. Baines*, 593 F.3d 159,

16

165 (2d Cir. 2010) (concluding that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law") (internal citations omitted).  Moreover, the applicable test in the retaliation context is that a "plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *White*, 548 U.S. at 68 (internal quotation marks omitted).

Even if plaintiff could raise a genuine issue of fact as to whether any of the alleged adverse actions would dissuade a reasonable employee from making a discrimination claim, plaintiff has not presented any evidence that these actions were causally connected to plaintiff's protected activity, here her complaints to the O. D.[2]  Under *Nassar*, "Title VII retaliation claims must be proved according to traditional principles of *but-for* causation . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  133 S. Ct. at 2533.  "Therefore, during the final stage of the burden shifting frame-work, the plaintiff must show that retaliation was a but-for cause of the adverse employment action."  *Dall v. St. Catherine of Siena Medical Ctr.*, 2013 WL 4432354, at *22 (E.D.N.Y. Aug. 14, 2013).[3]  It is clear that "[w]hile temporal proximity [between the protected activity and the adverse action] alone may still be

[2]     The plaintiff's complaint to the Department of Human Resources in May of 2004 is irrelevant because it occurred after all of the alleged adverse actions plaintiff complains of, and therefore, cannot be causally connected to these adverse actions.

[3]     The Court notes that district courts have applied the Supreme Court's recent holding in *Nassar* differently, some performing the but-for analysis at the *prima facie* stage, and others considering but-for causation in the pretext analysis.  *Compare Rivera v. N.Y.C. Dep't of Correction*, 2013 WL 3297597, at *4 (E.D.N.Y. June 28, 2013) (analyzing but for causation in the *prima facie* case determination) *with Moore v. Kingsbrook Jewish Med. Ctr.*, 2013 WL 3968748, at *14 (E.D.N.Y. Jul. 30, 2013) (analyzing but-for causation at the pretext stage).

sufficient at the prima facie stage, it is not sufficient at the pretext stage." *Id.* at *22, n. 15; s*ee El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext.").  As a result, plaintiff's purely temporal argument for establishing causation, namely that the discrimination escalated after she complained to the Office of Diversity, is insufficient by itself to raise a genuine question as to pretext.  Plaintiff has failed to provide any other evidence that the alleged adverse actions were causally connected to her complaints to the O. D., and as a result, her retaliation claim must fail.[4]

### IV. Plaintiff's 42 U.S.C. § 1981 Claims

42 U.S.C. § 1981 prohibits discrimination "with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson*, 375 F.3d at 224 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68-69 (2d Cir. 2000)).  As plaintiff concedes, "[t]he Courts apply the same legal elements and burden-shifting analysis for a Title VII race discrimination claim as they do for a [race-based] employment discrimination" claim under 42 U.S.C. § 1981.  (Pl.'s Mem. in Opp. to Summ. J. at 5.)  As a result, since plaintiff has not provided sufficient evidence to meet even the minimal burden of establishing a *prima facie* claim of discrimination under Title VII, her claims under  § 1981 must fail as well.  *See Johnson c. Cty. Of Nassau*, 480 F. Supp. 2d 581, 605 (E.D.N.Y. 2007) (quoting *Patterson*, 375 F.3d at 225) ("Most of

---

[4]    Because the plaintiff cannot establish a retaliation claim, the Court need not reach defendants' argument that plaintiff's retaliation claim must fail because she "did not claim retaliation in her EEOC charge."  (Defs.' Mem. at 13-16.)

18

the core substantive standards that apply to claims of discriminatory conduct in violation of

Title VII are also applicable to claims of discrimination in employment in violation of § 1981

. . . and the factors justifying summary judgment dismissing [plaintiff's] Title VII claim

against the municipal defendants for termination of his employment equally support the

summary dismissal of his claims for termination brought under 42 U.S.C. §§ 1981 and

1983.")

Similarly, retaliation claims under § 1981 are generally analyzed in the same manner as

under Title VII. *Acosta v. City of New York*, 2012 WL 1506954 at *8 (S.D.N.Y. Apr. 26,

2012) ("Claims of retaliation under [Title VII and § 1981] are generally analyzed in the same

way, with the same standards of liability.").   Since this Court has dismissed plaintiff's Title

VII retaliation claim, her § 1981 retaliation claim is also dismissed.

## V. Plaintiff's 42 U.S.C. § 1983 Claims

Count IV of the plaintiff's complaint alleges that defendants "deprived Plaintiff Hayle of

her rights . . . secured by the First Amendment, Fourteenth Amendment and other laws in

violation of 42 U.S.C. § 1983." (Sec. Am. Compl. ¶ 89, as Defs.' Ex. A.)  Further, plaintiff

claims that "Defendants have violated [her] rights of free speech, free association, equal

protection and due process."

Plaintiff makes no mention of her First Amendment claim in her brief and fails to allege

any way that the defendants infringed on her First Amendment rights.  Any claims of First

Amendment violations are, therefore, dismissed.  To the extent plaintiff attempts to make

out any Equal Protection Claim, the plaintiff fails because she has not succeeded on her Title

VII claim.  *Feingold*, 366 F.3d at 159 ("The elements of one are generally the same as the

elements of the other and the two must stand or fall together.")  In addition, to the extent

19

plaintiff's § 1983 claim is predicated on a violation of the Due Process Clause of the Fourteenth Amendment, her claim is dismissed as there is no evidence that plaintiff was deprived of a property or liberty interest. *See Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998) ("To state a Section 1983 claim [premised upon a due process violation], a plaintiff must demonstrate that he possessed a protected liberty or property interest, and that he was deprived of that interest without due process.").

## *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment pursuant to Rule 56 is granted in its entirety.  Plaintiff's claims under 42 U.S.C. § 2000(e) et. seq. (Title VII), 42 U.S.C. §§ 1981 and 1983, and New York's Human Rights Law, Executive Law § 296 are dismissed.

**SO ORDERED.**

Dated: Central Islip, New York

December 2 , 2013

_____/s/_____

Denis R. Hurley
United States District Judge